SEAN P. WALSH
Attorney at Law
WALSH & LEWIS PLLC
901 N. 4th Street
Coeur d'Alene, ID 83814
Phone: 208-415-1750
Fax: 208-758-0940
Email: jessica@lawgroupcda.com
ISBN:  7235

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELONIE DAWN SMITH, | CASE NUMBER    4:25-CV-125 |
| Petitioner, | PETITION FOR WRIT OF HABEAS CORPUS |
| V. | |
| JANELL CLEMENT, | 28 U.S.C. § 2254 |
| Respondent. | |

Melonie Dawn Smith submits this Petition for Writ of Habeas Corpus alleging that the state of Idaho is holding her in violation of the United States Constitution. She seeks a writ of habeas corpus directing Respondent to release or retry her within a reasonable time.

## JURISDICTION

1.  The Court has jurisdiction under Art. I, sec. 9, cl. 2 of the United States Constitution, 28 U.S.C. § 2241, and 28 U.S.C. § 2254.

## PARTIES

2. Idaho state prisoner Melonie Dawn Smith is incarcerated at the Pocatello Women's Correctional Center pursuant to a January 3, 2018 Judgment of Conviction, in which Honorable Darren B. Simpson sentenced her to a fixed term of life in prison for first degree murder, and to a concurrent five year term in prison with four years fixed for evidence destruction, alteration or concealment in the case of State of Idaho v. Melonie Dawn Smith, Bingham County case number CR-2017-573.

3. Respondent Janell Clement is the Warden at the Pocatello Women's Correctional Center.

## PROCEDURAL BACKGROUND

4. On February 13, 2017, the State of Idaho charged Ms. Smith with first degree murder and evidence destruction, alteration or concealment for events alleged to have occurred on or about February 9, 2017 in Bingham County Case Number CR-2017-573. Ms. Smith was convicted. She was thereafter sentenced on January 3, 2018.

5. Ms. Smith timely appealed her conviction to the Supreme Court of Idaho. The appeal was denied and remittitur issued on April 14, 2021.

6. Ms. Smith timely filed a petition for post-conviction relief in Bingham County Case Number CV06-22-0409 on March 18, 2022. The district court dismissed her petition, and Ms. Smith appealed timely to the Supreme Court of Idaho.

7. The appeal of the dismissal of her petition for post-conviction relief was denied and remittitur issued on February 11, 2025.

## FACTS

8. On February 11, 2017, Guy Lopez went to the Bingham County Sheriff's office to report that a friend of his, Melonie Dawn Smith, had killed David Davis. Lopez claimed that Smith had confessed to killing Davis two days earlier. Lopez claimed that Smith had told him that a Kevin Day had shot Davis in the legs twice outside of her home. Lopez claimed that Smith told him that after she had attempted to stop Davis' bleeding, she shot Davis in the head inside her home. Lopez claimed that Smith had requested his help in concealing the killing by cleaning the interior of the home and helping to dispose of Davis' body. Lopez claimed that earlier that day he had been inside Smith's home and saw Davis' body wrapped in plastic. Lopez also claimed to have seen various bones and biological debris from the shooting in a wood burning stove.

9. On February 11, 2017 at around 11:00pm, detectives and deputies of the Bingham County Sheriff's Department arrived at Ms. Smith's home. After law enforcement knocked at the door, Ms. Smith exited the home, shutting the door behind her. The officers told her there were reports that someone had been shot and needed medical attention, but Ms. Smith told them no one inside needed medical attention. Ms. Smith told law enforcement that only her mother, Bettie Duke, and herself were at home and that no one else was in the residence. Ms. Smith refused to let the officers go inside and look, telling them to get a warrant instead. Law enforcement told Ms. Smith that her home would be sealed and she and her mother would have to leave the residence if she continued to refuse the officers entry. Ms.

Smith stated that a Kevin had hurt a David by shooting David in the leg in the driveway, but both men had left. Ms. Smith denied that David was dead inside the house. Ms. Smith again told the officers to get a warrant, and the officers repeated that they would seize the home in anticipation of a search warrant. An office rof the Bingham County Sheriff's Department reminded other officers that a gun was reportedly next to the front door. Law enforcement told Ms. Smith that both she and her mother would need to leave the premises, and if they re-entered the house, an officer would have to accompany them. The officers eventually handcuffed Ms. Smith as she was standing in front of the door.

10. After the officers handcuffed Ms. Smith, Ms. Duke came to the front door and told law enforcement that no one else was in the home. Ms. Duke then told officers she was going to get a coat from the house. The officers told Ms. Duke that if she went inside, an officer would have to accompany her. Ms. Duke stated she was too shaky to stand in the doorway, and officers followed her inside the house.

11. While one officer remained with Ms. Duke as she sat in the main room, other officers went through the rest of the house with guns drawn, and found a large bag in the laundry room. Officers felt the end of the bag and identified two feet. The officers did not open or move the bag. However, officers relayed their findings to the officer who was still preparing the application for the search warrant.

12. A search warrant was issued thereafter and served on Ms. Smith's home about six hours after Mr. Lopez contacted the police. Davis' body was later discovered wrapped in plastic inside the home.

13. On February 13, 2017, the State of Idaho charged Ms. Smith with first degree murder and Ms. Smith thereafter moved the district court to suppress evidence discovered based on the warrantless search of her home by law enforcement.

14. The district court determined that exigent circumstances regarding the preservation of evidence supported the sealing of the scene and entry into Ms. Smith's home.

15. The district court also determined that the officers had reason to believe other persons besides Ms. Duke might be in the house, and that they might be armed and dangerous; therefore, the officers had reason to escort Ms. Duke into the home and to conduct a protective sweep for officer safety.

16. The district court determined that the officers discovered Mr. Davis' body in the plastic bag in plain view during the protective sweep.

17. The district court found that even without the evidence from the warrantless entry, the search warrant still would have been based on sufficient probable cause. Thus, the district court held that even if the officers' warrantless entry into Smith's home had been illegal, nonetheless the body would inevitably have been discovered during the execution of the search warrant.

18. The district court denied the motion to suppress, and the case proceeded to a jury trial.

19. During the trial, the State admitted over Ms. Smith's foundation objection Exhibit 4, a body camera video showing that Ms. Smith had invoked her

Fourth Amendment rights before the officers detained her and entered the house without a warrant.

20. Ms. Smith's trial counsel did not object to the State's admission of Exhibit 7, another body camera video showing the same conversation where she invoked her Fourth Amendment rights.

21 Ms. Duke testified at trial that she did not remember telling her other daughter and grandson, Kellie and Jeremy Leslie, that Ms. Smith had confessed to shooting Davis.

22. The district court allowed the Leslies to testify over Ms. Smith's hearsay objections. Ms. Leslie testified Ms. Duke said Ms. Smith had shot Mr. Davis in the head. Jeremy Leslie testified that Ms. Duke stated somebody had been killed in their house, and that she did not see anything, but had heard the gunshots.

23. During closing arguments, the State argued that the Leslies' testimony was substantive evidence that Ms. Duke told them that Ms. Smith had shot Mr. Davis in the head. The State also argued in closing that Ms. Smith's refusal to consent to the search was evidence of guilt because she wanted the officers to leave because she was hiding Mr. Davis' body. Trial counsel did not object to these arguments.

24. Over the course of jury deliberations, the only exhibit among the voluminous number of admitted trial exhibits that the jury specifically asked to review was Exhibit 4.

25. The jury returned guilty verdicts.

26. The district court imposed a unified fixed sentence of life in prison for first degree murder, sentenced her to a fixed term of life in prison for first degree murder, and a concurrent five year term in prison with four years fixed for evidence destruction, alteration or concealment.

27. On appeal to the Supreme Court of Idaho, Ms. Smith claimed, among other things, that the warrantless search of her home violated her Fourth Amendment rights. *State v. Smith*, 483 P.3d 1006, 1014-1019, (Idaho, 2021)

28. The Idaho Supreme Court affirmed the conviction. *Id.* at 482.

29. Ms. Smith filed a timely petition for post-conviction relief in the state district court, claiming ineffective assistance of counsel in violation of her Sixth Amendment rights. The district court appointed an attorney for her, who amended her petition.

30. The court summarily dismissed the amended petition.

31. Ms. Smith appealed from the dismissal of her petition for post-conviction relief. She claimed on appeal, among other arguments, that her trial counsel was ineffective in not objecting to the admission of the State's trial exhibits 4 and 7 on grounds that those exhibits included statements by Ms. Smith asserting her Fourth Amendment rights. Ms. Smith also claimed in her appeal that trial counsel was ineffective for failing to object to the State prosecutor's use of her assertion of her Fourth Amendment rights against her in closing argument, and for failing to seek certain limiting instructions.

32. Ms. Smith also claimed on appeal that trial counsel failed to object to the State's closing argument regarding the testimony of two witnesses, Kellie and Jeremy Leslie. During that argument, the State did not clarify that those statements regarding Bettie Duke's testimony was used for impeachment and not for the truth of the matter asserted. Because there was no objection, the Idaho Supreme Court did not find the matter was preserved for appeal. This failure was prejudicial to Ms. Smith as the closing argument was misleading. Furthermore, no limiting instruction was requested regarding the Leslies' testimonies.

33. The Court of Appeals of Idaho affirmed the summary dismissal of her petition for post-conviction relief on October 31, 2024. Ms. Smith timely filed a petition for review with the Supreme Court of Idaho. On February 11, 2025, that court denied the petition for review and issued a remittitur on that same date.

34. This petition contains fully exhausted claims.

## CLAIMS FOR RELIEF

### I.

**Ms. Smith's conviction was obtained in violation of the Fourth Amendment to the United States Constitution because the district court's unreasonable denial of her motion to suppress critical evidence, seized during an unlawful search and seizure, rendered her state court proceedings fundamentally unfair, thereby warranting federal habeas corpus relief.**

35. Ms. Smith incorporates paragraphs 1 through 31.

36. The district court's denial of the motion to suppress on grounds that the warrantless entry was justified by exigent circumstances was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States in *Illinois v. McArthur*, 531 U.S. 326, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001).

37. Furthermore, the district court's finding that exigent circumstances existed was based on an unreasonable determination of the facts in light of the evidence presented in that proceeding.

38. Furthermore, the district court's denial of the motion to suppress on grounds that the protective sweep exception justified the warrantless search through Ms. Smith's home was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States in *Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990).

39. Furthermore, the district court's finding that the protective sweep exception justified the warrantless search through Ms. Smith's home was based on an unreasonable determination of the facts in light of the evidence presented in that proceeding.

40. Furthermore, the district court's denial of the motion to suppress on grounds that the illegally obtained evidence would have been inevitably discovered by lawful means was contrary to, or involved an unreasonable application of, clearly established Federal law.

41. Furthermore, the district court's finding that the inevitable discovery doctrine applied to evidence discovered during the warrantless search through Ms. Smith's home was based on an unreasonable determination of the facts in light of the evidence presented in that proceeding.

42. If this claim is subject to the standards in the Antiterrorism and Effective Death Penalty Act (AEDPA), Ms. Smith alleges that the state court's adjudication was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

43. Accordingly, her rights protected by the Fourth Amendment were violated.

44. The denial of the motion to suppress was not harmless.

## II.

**Ms. Smith was deprived of her Sixth Amendment right to the effective assistance of counsel when her trial counsel failed to object to the admission of Exhibits 4 and 7 on grounds that they included statements by Ms. Smith asserting her Fourth Amendment rights, and that the assertion of her rights would be used against her.**

45. Ms. Smith incorporates paragraphs 1 through 31.

46. Ms. Smith had a right to the effective assistance of counsel under the Sixth Amendment, incorporated by the Fourteenth Amendment.

47. Trial counsel's failure to object to the admission of Exhibits 4 and 7 on grounds that they included statements by Ms. Smith asserting her Fourth Amendment rights, and that the assertion of her rights would be used against her, fell below an objective standard of reasonableness, and but for counsel's error, there is a reasonable probability that the outcome would have been different.

48. Furthermore, the district court's summary dismissal of Ms. Smith's petition for post-conviction relief claiming ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established Federal law.

49. Furthermore, the district court's summary dismissal of Ms. Smith's petition for post-conviction relief claiming ineffective assistance of counsel was based on an unreasonable determination of the facts in light of the evidence presented in that proceeding.

50. If this claim is subject to the standards in the Antiterrorism and Effective Death Penalty Act (AEDPA), Ms. Smith alleges that the state court's adjudication was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

51. Accordingly, her Sixth Amendment right to effective assistance of counsel was violated, and this error was not harmless.

### III.

Ms. Smith was deprived of her Sixth Amendment right to the effective assistance of counsel when her trial counsel failed to object to the State's closing argument regarding the Leslies' testimonies on grounds that the State misrepresented those statements as having been received as substantive testimony offered for the truth of the matter asserted instead of as impeachment of Ms. Duke. Furthermore, trial counsel failed to request a limiting instruction.

52.     Ms. Smith incorporates paragraphs 1 through 31.

53.     Ms. Smith had a right to the effective assistance of counsel under the Sixth Amendment, incorporated by the Fourteenth Amendment.

54.     Trial counsel's failure to object the State's closing argument regarding the Leslies' testimonies on grounds that the State misrepresented those statements as having been received as substantive testimony offered for the truth of the matter asserted instead of as impeachment of Ms. Duke fell below an objective standard of reasonableness, and but for counsel's error, there is a reasonable probability that the outcome would have been different.

55.     Furthermore, Trial counsel's failure to request a limiting instruction regarding the limited purpose of impeachment for which the jury could consider the Leslies' testimonies fell below an objective standard of reasonableness, and but for counsel's error, there is a reasonable probability that the outcome would have been different.

56. The district court's summary dismissal of Ms. Smith's petition for post-conviction relief claiming ineffective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established Federal law.

57. Furthermore, the district court's summary dismissal of Ms. Smith's petition for post-conviction relief claiming ineffective assistance of counsel was based on an unreasonable determination of the facts in light of the evidence presented in that proceeding.

58. If this claim is subject to the standards in the Antiterrorism and Effective Death Penalty Act (AEDPA), Ms. Smith alleges that the state court's adjudication was contrary to or an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). It was also based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2).

59. Accordingly, her Sixth Amendment right to effective assistance of counsel was violated, and this error was not harmless..

## EXHAUSTION OF STATE COURT REMEDIES

60. Ms. Smith has either fairly presented and properly exhausted all available state court remedies as to the claims presently raised in this petition, or she will be able to establish an exception so that any claim that the Court deems to be procedurally defaulted may be heard on the merits in this proceeding.

## RELIEF REQUESTED

Petitioner respectfully requests:

1. That leave to amend be given, if requested;

2. That discovery be granted, if requested;

3. That an evidentiary hearing be held to resolve any material issues of fact;

4. That the Court grant any other interim relief it deems necessary; and

5. That this Court issue the Writ to Respondent ordering that MELONIE DAWN SMITH be released from custody if she is not re-tried within a reasonable time set by the Court.

DATED this 10th day of March, 2025.

         WALSH & LEWIS PLLC


         By: */S/ Sean P. Walsh*
            Sean P. Walsh
            Attorney at Law

## VERIFICATION

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

I further declare under penalty of perjury MELONIE DAWN SMITH has reviewed the forgoing, has declared to me that the allegations are true under penalty of perjury, and has authorized me to sign this petition on her behalf, per 28 U.S.C. § 2242 and Rule 2(c)(5) of the Rules Governing Section 2254 Cases.

DATED this 10th day of March, 2025.

          WALSH & LEWIS PLLC


By:   */S/ Sean P. Walsh*
      Sean P. Walsh
      Attorney at Law