UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MELONIE DAWN SMITH,<br><br>Petitioner,<br><br>vs.<br><br>JANELL CLEMENT,<br><br>Respondent. | Case No. 4:25-cv-00125-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

Petitioner Melonie Dawn Smith is proceeding on the merits of Claim 2 in her Petition for Writ of Habeas Corpus that challenges her 2018 first-degree murder conviction in the Bingham County Seventh Judicial District Court of Idaho. She is serving a fixed life sentence. (*See* Dkt. 1.) The Court previously determined that Claims 1 and 3 were procedurally barred. (*Id.*)

All parties are deemed to have knowingly and voluntarily consented to proceed before a United States Magistrate Judge because none filed a declination of consent form with the Clerk of Court within the time frame set forth in the Notice of Assignment Setting Deadline. (*See* Dkts. 6, 9.)

Having reviewed the parties' briefing and the state court record, the Court enters this Order denying Claim 2 on the merits and dismissing this case with prejudice.

## REVIEW OF CLAIM 2

### 1. Introduction

Officers entered Smith's house without a search warrant. (A-1 at 159-62.) Inside, they found the corpse of David Davis. After Smith was charged with murder, her attorney filed a Fourth Amendment motion to suppress evidence found in the search. (*Id.*) The trial court denied the motion, concluding that the "Exigent Circumstances" exception for the purpose of preserving evidence applied:

> When Detectives Herbert, Chapa, and Phillips knocked on Smith's door, they had the following information: a violent crime had been committed on Smith's premises; a person by the name of David Davis had been shot (both outside and inside the home) by two people, Smith and "Kevin," and that Davis was dead. In addition, Smith was actively attempting to burn parts or all of the victim's body in her wood stove and to clean the blood and brain material from the walls and furniture. Smith asked Guy [Lopez, the witness who reported the crime to police] to help her move the victim's body. She intended to burn the body and the couch, which contained blood and brain matter, outside her home.

(*Id*. at 290 (bracketed parenthetical added).) The trial court alternatively concluded that the "Plain View Doctrine" and the "Inevitable Discovery Doctrine" applied to the evidence found in the warrantless search of Petitioner's home. (*Id*. at 299.)

At issue on habeas review are Exhibit 4 (body camera footage) and Exhibit 7 (dashboard camera footage) depicting the conversation Smith had with detectives before they entered her home without a search warrant. Claim 2 asserts that trial counsel, R. James Archibald, was ineffective for failing to object to admission of trial Exhibits 4 and

7 on grounds that they show Smith invoking her Fourth Amendment rights, and invocation of a Fourth Amendment right cannot be used as evidence of guilt.

Mr. Archibald made an *in camera* objection to Exhibit 4 on *foundation* grounds, asserting that the audio recording should not be played before witness Guy Lopez identified it. (A-7 at 492-95.) The trial court denied Smith's objection, questioning whether Guy Lopez could establish any foundation for the video. The court explained that proper foundation would have to be provided before the exhibits could be admitted (*Id*. at 495-96.)

At trial, the prosecutor laid foundation for the exhibit through Sergeant Phillips' testimony, because the footage was obtained from his body camera and his car dashboard camera. When the prosecutor asked for admission of Exhibit 4, defense counsel renewed the objection on foundation grounds only. It was overruled, and Exhibit 4 was admitted. Exhibit 7 was admitted without objection. (A-13 at 528-29; B-5 at 17.) In closing, "the prosecutor used Smith's exercise of her Fourth Amendment rights to impeach her version of events and argue the jury should infer guilt from them." (B-9 at 20.)

**2. Standard of Law: Habeas Corpus**

Federal habeas corpus relief may be granted where a petitioner is held in custody in violation of the United States Constitution. 28 U.S.C. § 2254(a). Where the petitioner challenges a state court judgment in which her federal claims were adjudicated on the merits, Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies.

Section 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

To satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014).

The source of clearly established federal law must come only from the holdings of the United States Supreme Court, but the district court may rely on circuit precedent as persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general

principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

A federal court may not grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be *objectively* unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted). *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The "unreasonable application" standard means that "[t]he prisoner must show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (citing *Richter*, 562 U.S. at 103). In other words, if *any* fairminded jurist could take a different view from the way the state appellate court resolved the claim, habeas corpus relief is not warranted. *Id*. at 525. Contrarily, if *all* fairminded jurists would agree that resolution of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law," then relief under § 2254(d)(2) is warranted. *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (citation omitted).

The foregoing standard is AEDPA's § 2254(d)(1) deferential standard. De novo review, which means *without* deference to the state court decision, applies in three circumstances: when the state appellate court did not decide a properly-asserted federal claim, when the state court's factual findings are unreasonable under § 2254(d)(2), or

when an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Under both AEDPA deferential and de novo review, if the factual findings of the state court are not unreasonable, the federal district court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings and the claim is properly before the court, the district is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

**3. Standard of Law: Ineffective Assistance**

The standard for Sixth Amendment ineffective assistance of trial counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

**A. *Deficient Performance***

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. "Because of the difficulties inherent in making

the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689 (internal citations and quotation marks omitted).

The *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986), and "the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695.

**B. *Prejudice***

Under the prejudice prong of *Strickland*, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury…. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, “[t]he likelihood of a different result must be substantial, not just conceivable.” *Richter*, 562 U.S. at 112.

When evaluating a claim under the standard of § 2254(d), the Court’s review of the state appellate court decision is “doubly deferential.” *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (“We take a “highly deferential” look at counsel’s performance, *Strickland, supra,* at 689, through the “deferential lens of § 2254(d).”).

The court may consider either the performance or the prejudice component of S*trickland* first. *Id.* at 697. The court need not consider one component if the other is insufficient. *Id.*

**4. Standard of Law: Fourth Amendment Rights**

The remaining Sixth Amendment ineffective assistance claim is based on a somewhat obscure Fourth Amendment theory—the accompanying right to not have one’s verbal invocation of the right to be free from unreasonable searches used as evidence of guilt in a criminal trial. In a motion to suppress, Mr. Archibald brought a widely-recognized, different Fourth Amendment claim—that a person has a right to be free from an unreasonable search of one’s home, including a warrantless search that does not meet a lawful exception. *Lange v. California*, 594 U.S. 295, 301 (2021). This type of claim is not at issue here.

At the time of her trial, there was one supporting Idaho case on the prosecution’s use of a Fourth Amendment verbal invocation of the right, *State v. Christiansen*, 163 P.3d 1175 (Idaho 2007), which reasoned:

> In general, "[t]he same rationale that precludes evidence of an accused's assertion of his or her Fifth Amendment Rights offered for the purpose of either impeachment or inferring guilt precludes evidence of the accused's assertion of his or her Fourth Amendment rights offered for the same purposes." *Christiansen*, 144 Idaho at 470, 163 P.3d at 1182.

(B-9 at 20.)

*Christiansen* relied on *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), analogizing Fifth Amendment precedent to a Fourth Amendment claim. 163 P.3d at 1182. The *Doyle* majority did *not* directly address the Fourth Amendment. *See* 426 U.S. at 636 (Stevens, J., dissenting) ("It is apparent … that these questions implicate Fourth Amendment issues that merit independent examination. Accordingly, like the Court, I do not address them.").

To date, the United States Supreme Court has not addressed this particular issue. But a Sixth Amendment ineffectiveness claim may assert that trial counsel acted ineffectively under *any* state or federal precedent that was applicable at the defendant's trial. The lack of United States Supreme Court precedent on this issue shows only that this particular Fourth Amendment claim is somewhat obscure, a conclusion that does play into whether trial counsel should have raised it.

**5. State Court Decisions**

On direct appeal, the Idaho Supreme Court applied fundamental error review to Smith's Fourth Amendment stand-alone claim and issued a written opinion affirming the Idaho Court of Appeals' decision. (B-9 at 18.) The Idaho Supreme Court applied *State v. Perry*, 245 P.3d 961 (Idaho 2010), which requires a defendant to show:

> (1) that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

245 P.3d at 978.[1]

On direct appeal, the Idaho Supreme Court concluded that Smith met the first *Perry* prong, that "admission of Exhibit 4 and the prosecutor's comments during closing arguments were used to imply Smith's guilt." (B-9 at 22.) But the Court also concluded that Smith failed to meet the second and third prongs: failing to show that trial counsel's objection to the admission to Exhibit 4 was not tactical and failing to show that the error affected the outcome of the case. (*Id*. at 19-24.)[2] No relief was granted.

---

1 The *Perry* fundamental error test looks somewhat like the *Strickland* ineffective assistance of counsel test. Fundamental error analysis is used only when an attorney failed to object to an occurrence that may have violated a federal Constitutional right. Fundamental error, however, must be proved without extra-record evidence (direct appeal), *see Perry*, 245 P.3d at 978, and ineffective assistance generally relies on extra-record evidence to show why counsel made particular decisions.

In addition, the *Perry* fundamental error test's prejudice prong (that the erroneously-admitted evidence *must* have affected the outcome of the case), 245 P.3d at 978, is higher than *Strickland*'s prejudice prong (that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"), 466 U.S. at 694.

2 In its de novo analysis of the *Strickland* prejudice prong, below, the Court does not defer to the Idaho Supreme Court's direct review fundamental error analysis factual findings because that Court made it clear that Smith would have an opportunity to present extra-record evidence of Mr. Archibald's reasons for not making the Fourth Amendment objection when she brought an ineffective assistance of trial counsel claim in the state district court on post-conviction review. Because the Idaho Court of Appeals later denied the ineffective assistance claim on the

In the subsequent post-conviction case, where Smith was permitted to bring supporting extra-record evidence for her claim, the state district court found:

> In her Amended Petition, Smith devotes a single paragraph to her position that Mr. Archibald's failure to object to Exhibits 4 and 7 constituted ineffective assistance of counsel. In her Objection to Summary Dismissal, Smith does not discuss the issue in anything other than broad terms. She offers no evidence, such as a declaration or affidavit from Mr. Archibald, addressing Mr. Archibald's reasoning (or oversight, as the case might have been) for agreeing to the admission of Exhibits 4 (with proper foundation) and 7. Mr. Archibald, being an experienced and effective trial attorney in criminal cases, cannot be assumed to have ignored the Fourth Amendment issue altogether, or to have no reason for his peripheral objection to Exhibit 4 and his lack of objection to Exhibit 7.

(C-1 at 18; D-5 at 7.)

On post-conviction appellate review, the Idaho Court of Appeals relied on the state district court's findings in the post-conviction case and on the Idaho Supreme Court's findings in the direct appeal case. the Idaho Court of Appeals characterized the Idaho Supreme Court's opinion as having found "that there was evidence that counsel's decision was indeed tactical." (D-5 at 8). The Idaho Supreme Court did not find that the omitting this *particular* Fourth Amendment objection was tactical, but rather found that Mr. Archibald had instead made a different objection to the at-issue evidence for a tactical reason:

> Smith's counsel never tried to exclude Exhibit 4 in its entirety. Instead, counsel simply wanted the State to call Lopez before playing the video because he thought "the

---

*Strickland* deficient performance prong, only *that* conclusion is subject to AEDPA deferential review. The prejudice prong will be decided on a less harsh standard—do novo review.

> police officers [were] exaggerating" what Lopez told them when the officers told Smith "[w]e have information out here that someone needs medical assistance." Smith's counsel's objection was that there may be insufficient foundation to play the tape until Lopez testified.

(B-9 at 23 (discussed in D-5 at 8).) In other words, the record showed that Mr. Archibald clearly formed and executed *a* tactic regarding the exhibits; it was not *the* tactic Smith would have preferred.

The Idaho Court of Appeals determined that, because Mr. Archibald used a tactic regarding the exhibits and because Smith failed to produce any other evidence about why Mr. Archibald did not make a Fourth Amendment objection based on *Christiansen*, Smith "failed to show that her trial counsel's performance with regard to Exhibits 4 and 7 was not tactical." (D-5 at 8.) The Idaho Court of Appeals noted that Smith had opportunity but did not provide additional evidence about tactics on post-conviction review beyond that found in the existing record on direct appeal. (*Id.*)

The Idaho Court of Appeals alternatively held that "Smith has failed to provide any evidence that even if trial counsel's decision was tactical, such decision resulted from shortcomings capable of objective review." (*Id.*) Under this alternative analysis, Smith also failed to meet the deficient performance prong of *Strickland*. (*Id.*)

Under either analysis, the Idaho Court of Appeals did not reach the prejudice prong on post-conviction appellate review.[3] The Idaho Supreme Court denied Smith's

[3] On direct appeal, the Idaho Supreme Court had performed a prejudice analysis on the strict *Perry* fundamental error prong 3 standard, that the erroneously-admitted evidence must have affected the outcome of the case, and found it did not. 245 P.3d at 978. *Strickland*'s prejudice

petition for review, thus ending Smith's state court challenges. (D-8, D-9.) Because the remaining claim was decided on the merits by the Idaho Court of Appeals and implicitly affirmed by denial of the petition for review by the Idaho Supreme Court, the Idaho Court of Appeals' decision is entitled to AEDPA deference. *See Wilson v. Sellers*, 584 U.S. 122, 125-26 (2018) ("[A] federal court should 'look through' [an] unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

### 6. Discussion

To prevail under the doubly-deferential AEDPA standard, Petitioner must show that the Idaho Court of Appeals unreasonably found and concluded that Mr. Archibald's failure to make a Fourth Amendment objection to admission of Exhibits 4 and 7 was not deficient performance. A review of the record for deficient performance begins with the presumption that an omitted object was tactical. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). A petitioner must show that counsel acted beyond the wide range of legitimate defense strategy when choosing not to object to admission of certain evidence.

---

standard is more lenient, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

A. *Mr. Archibald's Overall Tactics Were Reasonable, thereby Overcoming the Argument that he Failed to Use a Different Specific Tactic*

"[W]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Gentry*, 540 U.S. at 8 (citing *Strickland*, 466 U.S. at 690). Nothing in the Idaho Supreme Court's direct appeal decision shows that Mr. Archibald *consciously considered whether* to make a Fourth Amendment objection as a matter of tactics. Instead, the state court record shows he chose to challenge the *warrantless entry* on Fourth Amendment grounds *in a motion to suppress* and to *object* to the video footage of the conversation preceding the warrantless entry on *foundation* grounds *for the purpose of* highlighting the fact that detectives exaggerated the grounds for entry.

The record also shows that Mr. Archibald formed his defense strategy and tactics in the context of a significant amount of evidence supporting Petitioner's guilt. The question of whether that strategy included consideration of making a Fourth Amendment objection as to Exhibits 4 and 7 was a minor point, considering the enormous task of developing a defense strategy to combat the prosecution's strong case.

Mr. Archibald's defense was to show that Smith's friend, Kevin Day, shot Davis in the head. Day admitted to shooting the victim in both thighs with Smith's .22 revolver. (A-10 at 1477-78.) Day's story was that he shot Davis in the legs out of fear for his own safety, when Davis exited his car and came toward Day "very fast." (*Id.* at 1476.) Day testified that Davis had threatened Day throughout the prior month, causing Day to fear

for the safety of himself and his dog. (*Id*. at 1476-77.) After Day shot Davis in both thighs, Day put his dog in the car and left the scene. (*Id*. at 1479.)

It was uncontested that, after Day shot Davis, Smith tried to treat and bind up his non-fatal leg wounds in her home. (*Id*. at 1615-16.) Smith testified that Day returned to her home, shot Davis in the head as Davis rested on her couch, let out an "awful, horrible laugh," and then left. (*Id*. at 1617-18.)

Mr. Archibald's overall defense strategy included arguing that the State provided no ballistics test to prove which weapon shot Davis, there were no fingerprints on the gun used to kill Davis, there was no gun powder residue found on Smith, and she had no gun kick-back bruises. (A-10 at 1732.) Mr. Archibald argued that Day fled the scene, while Smith stayed (*id*. at 1733), and that Day received a plea offer for a short sentence in exchange for testifying against Smith (*id*. at 1734).

Mr. Archibald faced an uphill battle. Rather than raising the Fourth Amendment objection to Exhibits 4 and 7, he had to prepare for cross-examination of the following witnesses, whose testimony was particularly harmful to Smith's defense because the witnesses corroborated each other on several important facts:

Michelle Bennett testified that Smith was really upset because Davis was purchasing a jeep from Smith's mother but Davis never paid Smith's mother for the Jeep, and then a person Bennett knew only as "Robert" sold it to someone else. (A-9 at 1222). Smith was holding a rifle while she was talking to Bennett, and Smith said, "There's one in the chamber for Davis." (*Id*.)

Robert Magoon testified that Smith "was pissed at [Davis], because apparently he stole some rings or something, and she wanted to kill him." (*Id*. at 1340.) He also testified that "she wanted the Jeep back" from Davis and came to Magoon's house looking for the Jeep. (*Id*. at 1339-40.) Magoon testified that she said she wanted to kill Davis "[m]any times throughout our friendship." (*Id*. at 1341.) Magoon thought she was just upset with Davis and was not serious. (*Id*. at 1343.)

Robert Christianson testified that, the last time he spoke with Smith, she was "running around the Fort Hall casino looking for David Davis, making threats that she was going to kill him…. He hadn't paid her off for a Jeep or something that they had made a deal on previous to that." (*Id*. at 1348.) He said he didn't think anybody though she was serious. (*Id*. at 1356.)

Day testified that Smith told him by phone that she finished what he started. (A-10 at 1489.) Day said Smith told him, "He doesn't have a head." (*Id*. at 1490.)

Guy Lopez testified that Smith told him she had shot Davis and killed him. (*Id.* at 1538.) When she asked Lopez to come to her home, he asked her, "What's going on?" He testified that she responded, "I did it. I killed him. I blew his fucking head off." (*Id*. at 1539.)

Lopez said Smith identified the victim as "David Davis." (*Id*.) She told Lopez that "she was putting an animal down that was going to die anyway; so she was just doing it a favor." (*Id*. at 1539-40.) She said she used a ".45-70 with an armor-piercing round." (*Id*. at 1540.) Lopez testified that "she had placed the top of the head and brains in the

woodstove and tried to burn it, but it didn't burn." (*Id*. at 1542.) She showed Lopez the body. (*Id*.)

Kelly Black testified that Smith came to his house and said that she'd shot Dave; Black described Smith as "freaking out." (A-9 at 1369-70.) Neither Black nor his wife Kathy believed her. *Id*. at 1370. The next night Smith and her mother came over to the Blacks' residence and Smith "was all hysterical. She wanted everybody to go help her clean the mess up or something." (*Id*. at 1370.) Smith told Black other details—that she shot Davis in the head (*id*. at 1373), with a ".45-70, .44-40, some big old rifle" (*id*. at 1372).

Carlos Gonzalez testified that he ran into Smith at a gas station, and she told him she had shot somebody and needed help cleaning up a body. (A-9 at 1317.)

Bettie Duke, Smith's mother, testified that Smith said, "We put the son of a bitch out of his misery." (A-9 at 1255.) Kellie Leslie testified that Bettie Duke told her that Melonie and Kevin had shot someone, and Melonie had shot him in the head. (*Id*. at 1296.) Bettie told Leslie that Melonie had told her "something like, you know, with an animal, that she put them out of their misery." (*Id*. at 1297.)

With Mr. Archibald focusing on defending against all of the foregoing evidence, the Court concludes that it was an insignificant omission (whether by tactic or oversight) that Mr. Archibald did not ensure by motion in limine or verbal objection that the State did not wrongfully use Smith's invocation of her Fourth Amendment right to show guilt. Mr. Archibald decided on a different objection to serve a substantive purpose (showing exaggerated grounds for detectives to enter without a warrant) and also properly focused

his attention on developing a believable defense. He was not deficient for failing to address this somewhat obscure Fourth Amendment issue.

This Court agrees with the Idaho appellate courts that Smith has not overcome the strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. "Even if the prosecutor engaged in misconduct, defense counsel's failure to object does not establish incompetence." *Jackson v. McDowell*, No. C 13-05407 SBA (PR), 2017 WL 3593112, at *8 (N.D. Cal. Aug. 21, 2017). Rather, the defendant "must show that counsel's omission involved a *critical issue*, and that the failure to object could not be explained as a reasonable trial tactic." *Id.* (emphasis added).

B. *The Omitted Objection was Meritorious, but Failure to Make it Was not Deficient Performance*

The Idaho Supreme Court's fundamental error analysis shows that, had Mr. Archibald made the Fourth Amendment objection to the exhibits or the prosecutor's closing argument, the objection would have been sustained. The recordings of the doorstop conversations about the warrantless entry would have been redacted or the jury would have been admonished or instructed accordingly.[4]

---

[4] Respondent argues that the trial court lessened the impact of the Fourth Amendment violation by allowing the jury to hear the video but giving a limiting instruction immediately afterward:

> Ladies and gentlemen of the jury, you have seen a video that includes a recording of the defendant, Melonie Smith, stating that police entering into her home was an illegal search and seizure. You are instructed that whether or not police officers entered a home illegally is a question of law. This Court has already ruled that entry into Smith's home was legal. You are not to consider the legality of the officers entering into Defendant Melonie Smith's

*Strickland* counsels that a defense attorney's "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Id*. 466 U.S. at 690-91. The same is true about the lengths counsel must go to research constitutional objections. *Strickland* does not require defense counsel to consider every possible ground or objection. Smith's only legal basis for the objection was *Christiansen*, a rarely-cited legal principle, when compared with the large body of case law frequently cited on Fourth Amendment warrantless entry and Fifth Amendment invocation of the right to remain silent.

The fact that there is no United States Supreme Court precedent governing this issue shows the claim was somewhat obscure. Therefore, "the initial inquiry here is whether the Fourth Amendment objection was so obvious and promising that no competent lawyer could have failed to pursue it." *Arroyo v. United States*, 195 F.3d 54, 55 (1st Cir. 1999) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986)).

> Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent.

---

> home when deliberating upon her guilt or innocence of either of the charges brought by the State.

(A-7 at 524-25.) However, this argument is too broad—the jury instruction did *not* instruct the jury that it must not use Smith's invocation of her Fourth Amendment right—not just the legal entry issue—as evidence of her guilt. This instruction did not remedy the constitutional violation.

*Arroyo*, 195 F.3d at 55.

The Fourth Amendment issue was promising but not obvious, given that the law supporting such an objection is extremely sparse. In light of the overall record of Mr. Archibald's adequate strategy and performance for Smith, missing an issue such as this does not mark him as deficient or incompetent.

C. *Smith did not Show the Tactical Decision Was Based on Shortcomings Capable of Objective Review*

The Idaho Court of Appeals alternatively held that Smith failed to show the tactical decision about the Fourth Amendment objection was based on shortcomings capable of objective review. On post-conviction review, Smith had the opportunity to bring extra-record evidence to show that Mr. Archibald's tactic was framed without adequate investigation and research.

Smith did not present a declaration from Mr. Archibald stating his reasons for adopting a tactic of not raising the Fourth Amendment issue in favor of raising only a foundation issue. The only evidence in the record, as set forth above, showed Mr. Archibald had a tactic behind the foundation argument—to show that officers overstated the reporting witness's statement. The record shows Mr. Archibald had an overall strategy for the defense, which he adequately pursued and presented. The sheer amount of evidence pointing to Smith as the perpetrator also points to the reasonableness of Mr. Archibald's choice to focus time and effort on holes in the prosecution's case, such as lack of ballistics, gun powder, and kick-back bruise evidence. As the Court concludes below, there is not a reasonable probability that, but for the lack of the Fourth

Amendment objection, the result of the proceeding would have been different; therefore, Mr. Archibald's decision to focus his efforts elsewhere was reasonable.

This Court agrees that Smith did not present sufficient evidence showing that Mr. Archibald's failure to raise a Fourth Amendment objection to Exhibits 4 and 7 resulted from any action of his that is "capable of objective review." In fact, Smith brought *no* extra-record evidence for the Idaho Court of Appeals to review under an objective standard. Smith has not shown that the Idaho Court of Appeals' alternative decision was factually or legally unreasonable under § 2254(d).

D. *The Idaho Court Opinion Was Not Objectively Unreasonable*

This Court concludes that reasonable jurists could disagree over whether the Idaho appellate courts properly decided the deficient performance prong of *Strickland*, given that (1) Smith did not obtain a declaration from Mr. Archibald stating his reasons for not raising a Fourth Amendment objection (evidence leaning against Smith's position), (2) the record shows no trace that he considered and discarded this particular issue (evidence leaning toward Smith's position), (3) Mr. Archibald had a tactic for the objection he did make to Exhibit 4 (leaning against Smith), and (3) this particular Fourth Amendment issue was fairly obscure, (leaning against Smith). This Court is confident that not all fairminded jurists would agree that resolution of the claim was "an error well understood and comprehended in existing law," *see Matthews*, 567 U.S. at 48. Therefore, Smith cannot prevail.

E. *No Prejudice to the Defense Occurred*

Because the Idaho Court of Appeals found that Mr. Archibald's performance in not objecting to Exhibits 4 and 7 on Fourth Amendment grounds was not deficient, it did not reach the prejudice prong. In the alternative, this Court will review the prejudice prong de novo.

Even if an attorney's omission is inadvertent, relief is not automatic. "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Gentry*, 540 U.S. at 8. To assess prejudice, a court asks whether it is "reasonably likely" the result would have been different. *Strickland*, 466 U.S. at 696. This does not require a petitioner to show that counsel's actions "more likely than not altered the outcome," *id.* at 693, 697, but the likelihood of a different result must be substantial, not just conceivable, *id*. at 693*; Richter*, 562 U.S. at 111–12. The error must have been "so serious that it deprived [the defendant] of a fair trial with a reliable result." *Strickland*, 466 U.S. at 687.

The jury did hear evidence that Smith invoked her Fourth Amendment right to not have her home searched without a warrant. The jury did hear the prosecution argue that the reason she invoked her right was because she was guilty. This evidence and this argument violated Smith's Fourth Amendment rights.

However, the jury also heard and saw much more damaging *properly-admitted* evidence of *what was inside her home*—Davis's body lying under frigid inside conditions to slow decomposition and part of Davis's skull lying in the woodstove for attempted destruction. The State also presented many witnesses whose stories corroborated each

other about Smith's motive, her premeditation, her admission that she shot Davis in the head to "put him out of his misery," and her desperate attempts to find someone to help her clean up the crime scene and dispose of the body. The evidence against Smith at trial was overwhelming.

Based on the totality of the evidence, the Court concludes there is no reasonable likelihood that the jury would have acquitted Smith had they *not* heard Smith's verbal attempts to prevent officers from entering her home or the prosecution's closing remarks that her attempts were to hide her guilt. She was not deprived of a fair trial with a reliable result as a result of the Fourth Amendment violation.

On de novo review, Smith has failed to show that her defense was prejudiced by Mr. Archibald's failure to make the Fourth Amendment objection. The *Strickland* claim fails for lack of prejudice even if the decision was not tactical or was a tactic adopted without a reasonable basis.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED and DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States

Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: November 13, 2026

Honorable Debora K. Grasham
United States Magistrate Judge